CARSON v. HAWLEY, Sheriff of Pine County, Minn.

(Circuit Court of Appeals, Eighth Circuit. April 13, 1903.)

No. 1,830.

1. CONVERSION BY SHERIFF—ATTACHMENT AGAINST VENDOR—ESTOPPEL FROM MAKING DEFENSE THAT PLAINTIFF WAS FRAUDULENT VENDEE.

Where the fraudulent character of the sale of personal property found in the possession of the vendee makes a seizure of it by a sheriff under a writ of attachment against the vendor rightful, no subsequent affirmance of the sale, without the consent of the sheriff, by the attaching creditor, or by his representative, the trustee in bankruptcy of the vendor, can make the sheriff's seizure wrongful, or estop him from defending an action for conversion on account of it upon the ground that the sale was fraudulent and invalid.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Minnesota.

Newel H. Clapp (A. W. Clapp, on the brief), for plaintiff in error. P. J. McLaughlin, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. This is an action for $5,000 damages for the conversion on December 1, 1898, by the defendant, R. J. Hawley, as sheriff of Pine county, Minn., of a stock of goods then in the possession of the plaintiff, C. N. Carson. The defense is that the goods originally belonged to one Crittenden; that on October 25, 1898, Crittenden and Carson conspired together to make a sale of the goods, which was fraudulent and voidable as to the creditors of Crittenden, and to deliver the personal property to Carson with the intent to defraud these creditors; that Kellogg, Johnson & Co., a corporation, and a creditor of Crittenden, brought an action against him, and caused a writ of attachment to be issued out of the proper state court, which was directed to and which commanded the sheriff to levy upon and take into his possession the property of Crittenden, and that by virtue of this writ the sheriff seized this stock of goods,

which was then in the possession of Carson. There was a small amount of goods of the value of about $100 which had been put into the stock by Carson after his purchase, and for which the plaintiff recovered damages. No question arises over these goods, and the case will be considered and discussed as though they were not involved in the action.

At the trial the jury sustained the defense which has been stated, and no complaint of the proceedings relative to the trial of the issue which this defense presents is made. But counsel for the plaintiff insist that the court erred because it did not give an instruction to the jury that the plaintiff was entitled to a verdict for the value of the goods taken by the sheriff, and that the sheriff was estopped from asserting the fraudulent character of the sale to the plaintiff by the fact that the trustee in bankruptcy of Crittenden's estate had subsequently recovered of one of his creditors as a preferential payment a part of the proceeds of that sale, which Crittenden had received and paid to that creditor at the time of the sale. The contention is that the receipt of this portion of the proceeds of the sale by the trustee was an affirmance of the sale not only by the trustee, but by all the creditors of Crittenden, and especially by Kellogg, Johnson & Co., the plaintiff in the attachment. This question was properly raised and preserved in the court below by offers of testimony, rulings, and exceptions, which it is unnecessary to state in detail. The essential facts which condition it are these: The sale by Crittenden to the plaintiff, Carson, was made on October 25, 1898, and out of the proceeds of that sale, which were paid to him by the plaintiff, Crittenden paid to R. P. Smith & Sons Company, one of his creditors, a debt of about $679, which he owed to this creditor. On December 1, 1898, Kellogg, Johnson & Co. commenced its action against Crittenden, and issued the writ of attachment under which the sheriff seized the goods then in possession of Carson. Before the sheriff made the levy, Kellogg, Johnson & Co. fully indemnified him against all loss or damage which might result to him on account of his seizure of the property under the writ. On January 25, 1899, Crittenden was adjudged a bankrupt, and about February 10, 1899, L. W. French, the secretary, treasurer, and credit man of Kellogg, Johnson & Co., was chosen his trustee in bankruptcy at a meeting of creditors in which Kellogg, Johnson & Co. participated. French then and at all times thereafter knew the fraudulent character of the sale by Crittenden to Carson, and that it was voidable at the election of the creditors. On October 19, 1899, he commenced an action as trustee in bankruptcy against Smith & Sons Company (1) to recover as a fraudulent preference the $679 which Crittenden had paid to Smith & Sons Company out of the proceeds of his sale to Carson, and (2) to recover $2,150.24 for the conversion by Smith & Sons Company, of that portion of the personal property which Carson had received from Crittenden and had sold before the attachment was levied, on the theory that Carson was in reality the agent of Smith & Sons Company. About April 15, 1901, Smith & Sons Company offered, and French, as trustee, accepted, judgment in this action for $679, the alleged preferential payment, and this judgment was paid

to the trustee by Smith & Sons Company. On June 24, 1901, the action in hand was commenced, and the contention of counsel for the plaintiff is that the sheriff was estopped from defending it on the ground of the invalidity of the sale to Carson, because French, the trustee, and the representative of Kellogg, Johnson & Co., a creditor, affirmed the sale by accepting the $679 derived from its proceeds. They argue that as to the plaintiff, Carson, and the vendor, Crittenden, the sale of October, 1898, was valid; that this sale was voidable by creditors only; that no creditor could affirm it in part and avoid it in part; that the acceptance by any creditor of a part of the purchase price of the sale as Crittenden's property was an affirmance of the sale; that French, after his election as trustee, was the representative of all the creditors, and, among others, of Kellogg, Johnson & Co., the plaintiff in the attachment, and that his action was their action; that French's acceptance of the $679 as the repayment of a fraudulent preference of Smith & Sons Company, effected by the payment to Smith & Sons Company by Crittenden of a part of the money which he had derived from the sale to Carson, was an affirmance of the validity of that sale, which estopped French, the trustee, and Kellogg, Johnson & Co., the attaching creditor, from maintaining its invalidity; and that this estoppel of the trustee and of Kellogg, Johnson & Co. also estopped the sheriff from defending the action of conversion against him upon the ground that that sale was fraudulent and voidable and entitled the plaintiff, Carson, to a verdict in his favor in this action.

Conceding, without deciding, that the action of the trustee in 1901 in accepting the return of the preferential payment estopped him and Kellogg, Johnson & Co. from thereafter asserting the invalidity of the sale to the plaintiff, Carson, did that estoppel have the effect to deprive the sheriff of the right to defend this action against him upon that ground? The gravamen of this action—the allegation of the complaint upon which it is based—is that on December 1, 1898, under a writ of attachment against Crittenden in an action brought by Kellogg, Johnson & Co. against him, this sheriff seized and converted the goods of the plaintiff, Carson. The plaintiff alleged that the cause of action accrued on December 1, 1898, and, if it did accrue at all, it accrued on that day. The rights of the parties on that day, therefore, and not their rights at any other time, condition the existence or nonexistence of this alleged cause of action. It is not an action to recover the goods, and hence the subsequent rights of the parties to the property have no relevancy to the issue which the plaintiff, Carson, has tendered in his complaint, and which is to be determined in this action. This is an action for conversion on a given day. Its basis is the wrongful seizure on December 1, 1898. If the sheriff had the right to levy upon and take this property into his custody on that day, the plaintiff, Carson, has no cause of action. If the sheriff had no right to seize these goods under his writ on December 1, 1898, then the plaintiff can maintain this action. The instant this seizure was made, the damages alleged in this action accrued, if the seizure was wrongful. And no subsequent ownership of the property, not even a return of it by the sheriff to the plaintiff,

can relieve him from liability for the damages which the act charged in this complaint actually inflicted upon the plaintiff. On the other hand, if his seizure was rightful, if it was his right and his duty to levy upon and take possession of this property under his writ on December 1, 1898, no subsequent change of ownership in the property or in the relations of the parties, other than the sheriff, to the property or to each other, could make his seizure wrongful, or deprive him of any meritorious defense that he had to an action on account of that seizure.

But when the sheriff made this levy and took this property into his possession, the sale to the plaintiff was fraudulent and voidable as against Kellogg, Johnson & Co., the attaching creditors. They had elected, by the commencement of their action in attachment, to treat this sale as void, and the sheriff was exercising his legal right and discharging his lawful duty when he levied upon and took possession of the goods as the property of Crittenden under the writ against him. No cause of action to the plaintiff, therefore, accrued on December 1, 1898, on account of the levy and seizure, because the sheriff then had the right to make them. Concede now that in the summer of 1901 Kellogg, Johnson & Co. became estopped by the action of the trustee from asserting the fraudulent character and the invalidity of the sale. That fact evidently could not and did not make the sheriff's lawful seizure under his writ in December, 1898, wrongful. Nor could it nor did it estop him from pleading and proving the truth, nor from establishing his defense based on the invalidity of the sale, because he was in no sense a party or a privy to the act of the trustee, French, in affirming it, upon which counsel for the plaintiff relies. French did not represent this sheriff, and the latter was neither aware of nor did he consent to his act.

The facts that the sheriff was indemnified by Kellogg, Johnson & Co. against damage from his seizure of the goods under the writ, and that his relation to that corporation bears some analogy to that of an agent to his principal, cannot deprive him of his right to make his defense. The bond of indemnity protected him against lawful damages only. It gave him no indemnity against the damages that would have been recovered of him in this action if he had not defended it, because he was not legally liable for such damages, and it was his duty to present his defense. Besides, he was not required to rely upon his bond. He had the same right to present and maintain every lawful defense which he had that he would have had if no bond had ever been furnished to him. And while his relation to the plaintiff in the attachment bears some analogy to that of agent to principal, it is not that relation. The right and authority of an agent acting for his principal are limited by the right and authority of his principal, and his duty is implicit obedience to the command of that principal. It is not so in the relation of a sheriff to a plaintiff in a writ of attachment. He may seize property and make levies which the plaintiff has no right to make or maintain without his interposition. He is primarily the agent—the executive officer—of the court, and not of the plaintiff in the attachment, and his first duty is to faithfully comply with the provisions of the law, and to obey the

commands of the court. He may heed the directions and suggestions of the attachment plaintiff only subject to the law and the orders of the court. The conclusion necessarily follows that when, in the discharge of his official duty, he has executed a writ or obeyed an order of a court in such a way that he has a perfect legal defense for his action, neither the plaintiff in the attachment nor any agent or representative of that plaintiff can, without his consent, make his action unlawful, or estop him from presenting and maintaining any lawful defense which he may have to it.

Our conclusion is that, where the fraudulent character of a sale of personal property found in the possession of the purchaser makes it the right and the duty of a sheriff to seize it under a writ of attachment against the vendor, neither the plaintiff in the attachment nor a trustee in bankruptcy of the vendor can, by subsequently affirming the sale without the consent of the sheriff, estop him from maintaining the invalidity of that sale in defense of an action against him for the conversion of the property by his seizure of it under the writ.

The court below committed no error by its refusal to sustain the theory of the plaintiff that the sheriff was estopped from maintaining his defense to this action founded on the invalidity of the sale by the acts of Kellogg, Johnson & Co. and the trustee in bankruptcy affirming it subsequent to his alleged conversion of the property, and the judgment below is affirmed.